IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EDWARD M. CHUMLEY, *et al.*,      :

      Plaintiffs,

    v.      :

MIAMI COUNTY, OHIO, *et al.*,

      Defendants.      :

Case No. 3:14-cv-16

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DOC. #20); OVERRULING AS MOOT
DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERT'S
REPORT AND OPINIONS (DOC. #21); JUDGMENT TO ENTER IN
FAVOR OF DEFENDANTS AND AGAINST PLAINTIFFS; TERMINATION
ENTRY

---

Plaintiffs Edward and Catherine Chumley filed suit against Miami County,

Ohio, Miami County Sheriff's Office employees Tina Waymire and Jim Wysong,

Miami County Sheriff Charles Cox, and others,[1] seeking relief under 42 U.S.C.

§ 1983 for alleged violations of their constitutional rights.  These claims stem from

the execution of a search warrant at the Chumley's property by law enforcement

officials from Miami County and Preble County.  Plaintiffs also assert state law

claims of tortious interference with business relationships, intentional infliction of

---

[1]  The Complaint names fifteen John Doe and Jane Doe defendants, all alleged
employees or officials of the Miami County Sheriff's Office and/or Preble County
Sheriff's Office.  However, it does not appear that Plaintiffs have ever identified or
served any of these defendants.

emotional distress, defamation and false light, and slander.  This matter is currently before the Court on Defendants' Motion for Summary Judgment (Doc. #20), and on Defendants' Motion to Exclude Plaintiffs' Expert's Report and Opinions (Doc. #21).

## I.  Background and Procedural History

In 2012, Deputy Tina Waymire, of the Miami County Sheriff's Office ("MCSO"), learned from a confidential informant that stolen vehicles may be located in Preble County, on 58 acres of land owned by Plaintiffs Edward and Catherine Chumley.  To corroborate this tip, an MCSO deputy flew over the Chumley's property in December of 2012, and took over 200 photographs.  Doc. #20-1, PageID#224.

From those photographs, the confidential informant was able to identify a black utility trailer stolen from Sidney, Ohio, in 2004.  The owner of Piqua Transfer Station also identified two custom flatbed trailers that he had reported stolen in 2006.  In addition, Waymire had reason to believe that a silver utility trailer might be found on the property, because a criminal defendant named Scott Cooper had confessed to stealing it with Chumley's son, Wayne.  *Id.* at PageID##224-25.

On January 15, 2013, the MCSO conducted another flyover and took more pictures.  The owner of Piqua Transfer Station again identified his two stolen trailers on the photographs.  The photos showed that the black utility trailer, previously identified by the confidential informant, was still in the same spot on the

2

property. *Id.* at PageID#225. Waymire presented this evidence to Miami County Prosecuting Attorney Gary Nasal, and Preble County Assistant Prosecutor Gractia Manning. *Id.* Each believed there was probable cause to justify the issuance of a search warrant for the Chumley's property. Doc. #20-2, PageID#339; Doc. #20-3, PageID#341. Manning drafted both the search warrant affidavit for Waymire's signature and the search warrant. Doc. #20-3, PageID#340.

On January 18, 2013, Judge Wilfred Dues, of the Preble County Common Pleas Court, reviewed the affidavit and signed the search warrant. Doc. #20-3, PageID##342-43. The warrant was executed that same morning by more than a dozen law enforcement officers from MCSO, the Preble County Sheriff's Office ("PCSO"), and the National Insurance Crime Bureau. Doc. #20-1, PageID#226. MCSO Deputy Jim Wysong was one of the officers who participated in the search. Doc. #20-4, PageID#347.

Only Catherine Chumley was home when the law enforcement officers arrived. Doc. #16, PageID#68. When they asked her if she had the keys to certain locks on the trailers, she told them that her husband had them. *Id.* at PageID##72-73. Catherine testified that the officers ordered her to get in her car and leave while they conducted the search. *Id.* at PageID##62, 70. She testified that she was so upset that she does not remember how she got to her son's house, which was about 15 minutes away. *Id.* at PageID##70-71.

Edward Chumley, who was out of town, testified that his son called to tell him that officers were searching the property. Doc. #17, PageID#98. Edward

3

went home and found officers cutting locks off the trailers. He claims that he offered to let them use his keys, but the officers refused. Edward subsequently replaced the locks that were damaged, at a total cost of between $20.00 and $100.00. *Id.* at PageID##99-102. He testified that officers also damaged the roll-up door on one of his trucks, the door to his pump house, and the latches on another trailer and tool truck. *Id.* at PageID##106-10. In addition, because the officers left several trucks open after the search, raccoons got inside and damaged mattresses he had stored inside. *Id.* at PageID#111. Catherine Chumley testified that, inside the house, officers emptied closets, rummaged through drawers, dumped a coin collection, and left the house in disarray. Doc. #16, PageID##79-81.

The officers located several vehicles with tampered Vehicle Identification Numbers, but no vehicles were removed from the property. Doc. #20-1, PageID #226. The officers did take some files containing vehicle titles and registrations, but returned all of them to the Chumleys the next day. *Id.* at PageID#227; Doc. #20-4, PageID#347. The Chumleys were not charged with any crimes.

The Chumleys later filed suit against Miami County, Tina Waymire, Jim Wysong, and Miami County Sheriff, Charles A. Cox.[2] They sought relief under 42 U.S.C. § 1983 for alleged violations of their Fourth and Fifth Amendment rights. They also asserted state law claims of tortious interference with business

––––––––––––––––––––––––

[2] Waymire, Wysong and Cox are sued in their individual capacities.

4

relationships, intentional infliction of emotional distress, defamation and false light, and slander. Doc. #1.

Defendants have now filed a Motion for Summary Judgment, Doc. #20, along with a Motion to Exclude Plaintiffs' Expert's Reports and Opinions, Doc. #21. For the reasons set forth below, the Court sustains the Motion for Summary Judgment, and overrules as moot the Motion to Exclude Plaintiffs' Expert's Reports and Opinions.

## II.    Defendants' Motion for Summary Judgment (Doc. #20)

### A.    Summary Judgment Standard

 Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

6

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties.  Fed. R. Civ. P. 56(c)(3).  "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).  If it so chooses, however, the court may also consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).

### B.    42 U.S.C. § 1983 Claims

Plaintiffs have asserted three claims under 42 U.S.C. § 1983.  Section 1983 provides an avenue of recovery against state actors who subject individuals to the deprivation of federal rights.  This statute "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  In order to recover under § 1983, a plaintiff must prove that the defendant, while acting under color of state law, violated rights secured by the Constitution or laws of the United States. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Here, it is undisputed that Defendants were acting under color of state law. The only question is whether they violated Plaintiffs' constitutional rights.  Count One of Plaintiffs' Complaint alleges that Defendants violated Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures.  Count Two alleges that Defendants violated the Takings Clause of the Fifth Amendment by

7

seizing and damaging certain personal property during the execution of the search warrant.[3] Count Seven asserts a claim of supervisory liability against Sheriff Cox, based on his alleged failure to instruct and supervise his officers concerning the procurement and execution of search warrants.

### 1. Count One: Fourth Amendment Claims

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. amend. IV. Count One of the Complaint alleges that Defendants violated the Fourth Amendment by procuring and executing a search warrant that was not supported by probable cause. More specifically, Plaintiffs maintain that: (1) Waymire is liable for seeking a search warrant without probable cause; and (2) Waymire, Wysong, and Cox are liable for participating in the illegal search. Plaintiffs also seek to hold Miami County liable for the alleged Fourth Amendment violation.

#### a. Qualified Immunity

Defendants Waymire, Wysong and Cox contend that they are entitled to qualified immunity on this claim. The doctrine of qualified immunity shields government officials from liability for civil damages for actions taken in the scope of their duties, unless their conduct violates "clearly established statutory or

---

[3]   Counts One and Two also allege violations of the Ohio Constitution. However, because § 1983 offers "sufficiently broad and inclusive remedies" for the same alleged wrongs, there is no private remedy for alleged violations of the Ohio Constitution. *See Provens v. Stark Cnty. Bd. of Mental Retardation & Developmental Disabilities*, 64 Ohio St. 3d 252, 261, 594 N.E.2d 959, 966 (Ohio 1992).

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Rather than being a "mere defense to liability," it provides "an immunity from suit." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and, "[w]hen properly applied, protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, -- U.S. --, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Once this defense is raised, Plaintiffs bear the burden of showing that the defendants are *not* entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

> To determine whether a government official is entitled to qualified immunity, we consider the two-part test described in *Saucier v. Katz*, which asks whether "a constitutional right would have been violated on the facts alleged" and, if so, whether the right was "clearly established." 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

*Occupy Nashville v. Haslam*, 769 F.3d 434, 442 (6th Cir. 2014). These two questions may be addressed in any order. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

(1)

The Court turns first to Plaintiffs' claim that Waymire violated the Fourth Amendment by seeking a search warrant without probable cause to believe that

9

stolen trailers would be found on their property. Waymire argues that she is entitled to qualified immunity on this claim because, based on the facts alleged, there was no constitutional violation. She maintains that she did, in fact, have probable cause to believe that the Chumleys were concealing stolen trailers on their property. The Court agrees.

Probable cause for a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As the Supreme Court recently noted, "[p]robable cause is not a high bar." *Kaley v. United States*, -- U.S. --, 134 S. Ct. 1090, 1103 (2014). In this case, that slight burden was clearly satisfied.

Waymire's affidavit, Doc. #20-1, PageID##223-27, describes how her investigation of Chumley's property began, with information received from a confidential informant who had previously provided valuable information leading to several arrests and the shutdown of a Darke County chop shop. That information was then corroborated through photographs taken during a December 2012, flyover. The owner of two custom flatbed trailers, which were stolen in 2006, was able to positively identify his trailers in those aerial photographs. One trailer was identifiable because damage to the deck had been repaired with boards. The other had been special ordered and was identifiable because four boards were mixed in with the steel deck. A black utility trailer located on the property was also identified in the photos by the confidential informant as one that was stolen

from Sidney, Ohio. According to Waymire's affidavit, the confidential informant had "intimate knowledge" of that particular theft.

Plaintiffs argue that the information contained in Waymire's affidavit was "stale," because the theft of the two custom flatbed trailers had occurred in 2006, more than six years before Waymire received the tip from the confidential informant. The date of the theft, however, is largely irrelevant to the question of probable cause. Because retaining stolen property is a continuing offense, *see State v. Estle*, No. CA2001-10-016, 2002 WL 745488, at *2 (Ohio Ct. App. Apr. 29, 2002), the only relevant question is whether there is a fair probability that the stolen property will be found in the place sought to be searched.

Waymire's affidavit for the search warrant, Doc. #20-1, PageID##228-30, was executed on January 18, 2013. Had her request for a search warrant been based solely on the original tip from the confidential informant, and the identification of the stolen property from the pictures taken on December 5, 2012, the Court agrees that staleness could be a concern. It is undisputed, however, that a second flyover was conducted on January 15, 2013, just three days before her affidavit was executed. During that flyover, additional photographs were taken. The owner of the two stolen trailers again identified his property from those new photographs. In addition, the utility trailer, previously identified by the confidential informant, was in the same place it had been on December 5, 2012. This again corroborated the earlier evidence, eliminating any staleness concerns. *See United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998) ("[w]here recent

11

information corroborates otherwise stale information, probable cause may be found") (quotation omitted).

Plaintiffs also challenge Waymire's reliance on the tip of the confidential informant. Citing *United States v. Sonagere*, 30 F.3d 51 (6th Cir. 1994), Plaintiffs cite two factors to be considered in determining whether the tip of a confidential informant provides a substantial basis for concluding that a search will uncover evidence of wrongdoing.

> First, an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the informant's] tip to greater weight than might otherwise be the case." . . . Second, the extent to which the tip is corroborated by the officers' own investigation is significant.

*Id.* at 53 (quoting *Gates*, 462 U.S. at 234, 244). In addition, an informant's veracity, reliability, and the basis of his knowledge are all highly relevant in determining the value of the tip. *Gates*, 462 U.S. at 230.

Plaintiffs note that Waymire had no signed statement from the confidential informant stating that he actually viewed the stolen property on the Chumley's property. They characterize his tip as unreliable hearsay. Waymire stated in her affidavit, however, that:

> the Miami County Sheriff's Office and your affiant have worked with this informant since 2008 and have made several arrests and executed successful search warrants based on the information provided by him; that the Miami County Sheriff's Office in cooperation with the Darke County Sheriff's Office was also [] able to shut down a chop shop located in Darke County using information obtained [from] this informant in September, 2012; that your affiant finds him to be a reliable and trustworthy source of information.

Doc. #20-1, PageID#229.

Plaintiffs point out that, contrary to this statement, Waymire testified in her deposition that she had never met the confidential informant or worked with him prior to this.  Doc. #25, PageID#410.  As Waymire explained in her Supplemental Affidavit, however, she was aware that the confidential informant, Chad Cooper, had previously worked with Miami County title investigator Billy Ray, and had provided reliable information that led to the filing of other criminal charges.  In addition, she *did* personally work with the confidential informant in connection with the investigation and prosecution of Randy Cohee, who operated the Darke County chop shop referred to in her affidavit.  The confidential informant provided accurate information that led to Cohee's indictment.  Doc. #31-1, PageID##585-86.  Waymire's investigation into the Chumley's property was a direct outgrowth of the Cohee case.  Doc. #25, PageID##410-13.  Her Supplemental Affidavit therefore provides a reasonable explanation for her seemingly inconsistent deposition testimony.

Waymire's affidavit further states that the confidential informant "had intimate knowledge of Scott Cooper being responsible for taking the trailer from Sidney, Ohio."  Doc. #20-1, PageID#229.  The basis for this knowledge is not fully explained in the affidavit, but it factors into Waymire's probable cause determination.  She explained at her deposition that Scott Cooper, the confidential informant's father, had confessed to stealing a trailer from AA Trailer Sales in Delphos with one of the Chumleys, and to bringing another stolen trailer to the Chumley's property.  Doc. #25, PageID##419-20.

13

In the Court's view, based on the facts alleged, Waymire had probable cause to believe that at least three stolen trailers would be found on the Chumley's property. She properly relied on the tip from the confidential informant, which was independently corroborated before Waymire sought the search warrant.[4] The MCSO conducted two flyovers of the property, and took hundreds of aerial photographs, from which at least three stolen trailers were identified. Because probable cause existed, Waymire did not violate the Fourth Amendment by seeking the search warrant at issue. She is, therefore, entitled to qualified immunity on this claim.

(2)

The Court turns next to the claim that Waymire, Wysong, and Cox violated Plaintiffs' Fourth Amendment rights by *participating* in a search that was not supported by probable cause. As an initial matter, because Plaintiffs have presented no evidence that Sheriff Cox was present at the scene or participated in the execution of the search warrant, he is not subject to liability on this basis. To the extent that Plaintiffs argue that he is nevertheless liable for the allegedly illegal search, in his capacity as a *supervisor*, this is duplicative of Count Seven and will be addressed below.

_____

[4]   Plaintiffs appear to argue that, *prior to seeking a search warrant*, Waymire was required to ask the Chumleys for consent to search the property in an attempt to corroborate the confidential informant's tip, but they cite to no authority in support of this proposition.

14

It is undisputed that Waymire and Wysong participated in the execution of the search warrant. For the reasons set forth above, the Court finds that the warrant was supported by probable cause. Thus, Waymire and Wysong are entitled to qualified immunity on this basis. In the alternative, they are entitled to qualified immunity because they relied in good faith on a search warrant issued by a neutral magistrate, and that warrant "was not so obviously lacking in probable cause that the officers can be considered 'plainly incompetent' for concluding otherwise." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1250 (2012) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

As the Court explained in *Messerschmidt*, "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Id.* at 1245. As a general rule, police officers "cannot be expected to question the magistrate's probable-cause determination." *United States v. Leon*, 468 U.S. 897, 921 (1984). The only exception arises when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley*, 475 U.S. at 341.

In this case, Miami County Prosecuting Attorney Gary Nasal, and Preble County Assistant Prosecutor Gractia Manning, both believed, *without reservation*, that there was probable cause to seek a search warrant for the Chumley's property. Doc. #20-2, PageID#339; Doc. #20-3, PageID#341. Their endorsement is relevant to the question of whether a reasonably competent officer would have

requested the warrant. *See Messerschmidt*, 132 S. Ct. at 1249-50 (holding that the fact that the officers obtained approval of the warrant application from a supervisor and the deputy district attorney "is certainly pertinent in assessing whether they could have held a reasonable belief that the warrant was supported by probable cause.").

Under the circumstances presented here, the Court cannot conclude that Waymire and Wysong were plainly incompetent in relying on the search warrant issued by the neutral magistrate. For the reasons discussed above, the factual allegations contained in Waymire's affidavit established a fair probability that stolen trailers would be found on the Chumley's property. Because Waymire and Wysong acted in an objectively reasonable manner in relying on the search warrant issued by Judge Dues, they are entitled to qualified immunity on this claim.

### b. Municipal Liability

Plaintiffs also seek to hold Miami County liable for the alleged Fourth Amendment violations of its employees. A municipality cannot be held liable under § 1983 merely because it employs an individual who engages in unconstitutional conduct. Rather, Plaintiffs must prove that a policy or custom of the municipality was the "moving force" behind the alleged constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Absent an underlying constitutional violation, there is no basis for imposing municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that, if the individual employee inflicted no constitutional injury, the

16

municipality cannot be liable for damages, regardless of the existence of a policy or custom); *Meals v. City of Memphis*, 493 F.3d 720, 731 (6th Cir. 2007) (reversing denial of summary judgment to city after finding no constitutional violation by police officer); *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000) (a conclusion that no officer violated a constitutional right defeats claim against county as well); *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 471 (6th Cir. 2006) (absent a showing that employees violated plaintiff's constitutional rights, the school district could not be held liable).

As discussed above, Plaintiffs have failed to establish a Fourth Amendment violation. Probable cause existed to believe that stolen trailers would be found on the Chumley's property. Because neither Waymire nor Wysong engaged in unconstitutional conduct in procuring the search warrant or participating in the search, Miami County is entitled to summary judgment.

Moreover, even if Plaintiffs could establish a Fourth Amendment violation, they have failed to present sufficient evidence from which a reasonable jury could find that a custom or policy of the county was the moving force behind it. The Sixth Circuit has held that such a policy or custom may consist of: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

17

Plaintiffs alleged in the Complaint that Miami County has a custom or practice of violating the rights of persons believed to possess knowledge relevant to criminal investigations, routinely arresting those individuals, and searching their homes. However, they have presented no evidence of any such policy or custom.

In their response brief, Plaintiffs argue instead that Miami County has a policy of inadequate training concerning the procurement and execution of search warrants, and that this was the moving force behind the constitutional violation in this case. They note that Dave Duchak, Chief Deputy Sheriff of Miami County, admitted in his deposition that the MCSO has "no written procedure on what constitutes probable cause." Doc. #19, PageID#157.

As the Supreme Court noted in *Connick v. Thompson*, -- U.S. --, 131 S. Ct. 1350, 1359 (2011), "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." A plaintiff must show that the municipality is deliberately indifferent to the rights of persons with whom the employees come into contact. Ordinarily, a plaintiff must establish deliberate indifference by proving a pattern of similar constitutional violations by untrained employees. *Id.* at 1359-60. *See also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) ("A failure-to-train claim . . . requires a showing of 'prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that training in this particular area was deficient and likely to cause injury.") (citation omitted). Plaintiffs have offered no evidence of a history of constitutional violations by Miami County employees.

18

In rare situations where the employees have received no relevant training, and "the unconstitutional consequences of failing to train" are "patently obvious," deliberate indifference may be established without showing of a pattern of violations. *Connick*, 131 S. Ct. at 1361 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

In *Connick*, the Court rejected the plaintiff's claim that recurring *Brady* violations were the obvious consequence of failing to provide prosecutors with formal in-house training on the subject. *Id.* at 1362-63. It pointed out that the prosecutors learn about *Brady* requirements in law school, and through continuing legal education, and on-the-job training. The Court did not "assume that prosecutors will always make correct *Brady* decisions or that guidance regarding specific *Brady* questions would not assist prosecutors. But showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." *Id.* at 1363.

There are many similarities between this case and *Connick.* Chief Deputy Sheriff Duchak testified that all officers are trained on search warrant procedures as part of their basic police academy training. Doc. #19, PageID#149. It is "engrained [P]olice 101" that probable cause is required to get a search warrant. *Id.* at PageID#156. Miami County has no "written procedure on what constitutes probable cause," because, as Duchak explained, "[t]hat's something that, again, is taught to every officer from the police academy on throughout their career." *Id.* at PageID#157.

19

The existence of probable cause must be determined on a case-by-case basis, and is highly fact-specific, and training cannot possibly cover every circumstance that an officer might encounter.  Officers may sometimes make mistakes concerning the existence of probable cause.  However, as in *Connick*, Plaintiffs have failed to establish that recurring constitutional violations are an obvious consequence of failing to provide the officers with more specific guidance.  Therefore, even if Plaintiffs could prove that Miami County employees violated Plaintiffs' Fourth Amendment rights, Miami County is entitled to summary judgment on the "failure-to-train" claim.

### 2.    Count Two:  Fifth Amendment Claim

Count Two of the Complaint alleges a violation of the Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment.  The Takings Clause prohibits the government from taking private property "for public use, without just compensation." U.S. Const., amd. 5.  Here, Plaintiffs seek compensation for certain personal property that was allegedly damaged during the course of the search.

Quoting *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1154 (Fed. Cir. 2008), Defendants argue that when the government retains or damages personal property "pursuant to some power other than eminent domain, then the plaintiff has failed to state a claim for compensation under the Fifth Amendment." *See also Waldon v. Wilkins*, 400 F. App'x 75, 79 (7th Cir. 2010) (noting that

police power is broader than takings power, and generally does not require compensation).

Although the Takings Clause may be inapplicable, Defendants concede that damage to personal property, during the course of a search, may give rise to a Fourth Amendment violation. "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful." *United States v. Ramirez*, 523 U.S. 65, 71 (1998). The Supreme Court has acknowledged that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979). "The reasonableness of the damage must be evaluated with reference to the target of the search." *Koller v. Hilderbrand*, 933 F. Supp. 2d 272, 278 (D. Conn. 2013). In addition, damage which is *de minimis* in nature is not compensable. *See Streater v. Cox*, 336 F. App'x 470, 477 (6th Cir. 2009).

Defendants argue that, even if Count Two is construed to allege a Fourth Amendment violation, summary judgment is nevertheless warranted. The Court agrees. Although Plaintiffs initially alleged that the officers damaged a safe, Edward Chumley admitted at his deposition that this was not true. Doc. #17, PageID#104. Likewise, although the Complaint alleged that the officers seized a number of business files and refused to return them, the Chumleys testified to the contrary at their depositions. Doc. #16, PageID#77; Doc. #17, PageID##113-14.

Catherine Chumley testified that the officers emptied the closets, dumped a coin collection onto the bed, and left the house in disarray after the search. Doc.

21

#16, PageID##79-81.  However, such conduct does not amount to a constitutional violation.  *See Koller*, 933 F. Supp. 2d at 279; *Brown v. City of Utica*, 854 F. Supp. 2d 255, 262 (N.D.N.Y. 2012).

What remains is Plaintiffs' claim that, during the course of the search, Defendants cut locks and broke latches off of some of the trailers, damaged the roll-up door on a truck, and damaged the door frame and lock on the pump house. They also allege that, because the officers did not thereafter close the trailers, animals got into the trailers and damaged four or five mattresses.  Doc. #17, PageID##106-11.

Defendants are entitled to summary judgment on this claim for several reasons.  Given the target of this search, and that the fact that Catherine Chumley did not have keys to the locks, the Court questions whether a reasonable jury could find the alleged damage to be excessive or unnecessary.  But even if the alleged damage were deemed to be unnecessary, it is *de minimis* and non-compensable.  While Edward Chumley testified that he replaced the cut locks at a total cost of less than $100.00, *id.* at PageID#102, he has offered no other quantification of damages.

More importantly, Plaintiffs have pointed to no evidence showing that Defendants Waymire or Wysong were the officers that caused any of the alleged property damage.[5]  Plaintiffs bear the burden of establishing that individual officers

_____

[5]  As previously noted, there is no evidence that Sheriff Cox was present when the warrant was executed.

are directly responsible for the alleged damage. *See Gordon v. Louisville/Jefferson Cnty. Metro Gov't*, 486 F. App'x 534, 541 (6th Cir. 2012) (affirming summary judgment in favor of officers where plaintiff presented no evidence that any particular officer was responsible for the damage alleged).

Here, Waymire has submitted an affidavit specifically stating that she did not cut any of the locks, or damage any of the Chumley's property. Doc. #20-1, PageID#227. Plaintiffs have presented no evidence to refute this. Nor have Plaintiffs pointed to any evidence that Wysong caused any of the damage alleged. Therefore, with respect to Count Two of the Complaint, the Court finds that there is no genuine dispute of material fact, and that Defendants Waymire and Wysong are entitled to judgment as a matter of law.[6]

### 3.   Count Seven:  Supervisory Liability

Count Seven of the Complaint asserts a § 1983 claim of "failure to supervise" against Miami County Sheriff Charles A. Cox.  Plaintiffs allege that Cox, acting under color of law, "failed to instruct, supervise, control or discipline" the officers under his control, thereby exhibiting deliberate indifference to Plaintiffs' constitutional rights.  Doc. #1, PageID##14-15.

Sheriff Cox is entitled to summary judgment on this claim for at least two reasons.  First and foremost, because Plaintiffs have failed to present evidence from which a reasonable jury could find that any employee under Sheriff Cox's

---

[6]  Plaintiffs have not sought to hold Miami County liable for the constitutional violations alleged in Count Two.

control violated Plaintiffs' constitutional rights, Sheriff Cox is not subject to personal liability. *See McQueen*, 433 F.3d at 470 ("a prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor.").

Second, absent evidence that Sheriff Cox directly participated in the alleged misconduct, or "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers," he is not subject to personal liability. *Hays v. Jefferson Cnty.,* 668 F.2d 869, 874 (6th Cir. 1982). *See also Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors"). Here, Plaintiffs maintain that because Sheriff Cox was aware of Waymire's investigation and knew that she planned to seek a search warrant, he implicitly authorized and knowingly acquiesced in her allegedly unconstitutional conduct. Chief Deputy Duchak testified, however, that although Waymire occasionally briefed him and Sheriff Cox on her progress in the Chumley case, they were not involved in coordinating her application for the search warrant with the Preble County prosecutor. Doc. #19, PageID##158-62.

Plaintiffs also allege that Sheriff Cox is liable for failing to train his deputies on the proper procedure for obtaining and executing search warrants. However, as the Sixth Circuit explained in *Phillips v. Roane County,* 534 F.3d 531, 543-44 (6th Cir. 2008), general allegations that officers are not properly trained "are more

appropriately submitted as evidence to support a failure-to-train theory against the municipality itself, and not the supervisors in their individual capacities."

On a related note, Plaintiffs allege that Sheriff Cox is liable for failing to train his officers that they are not permitted to order property owners to leave while a search is being conducted. It appears to be undisputed that the Chumleys were asked to leave the property. Doc. #16, PageID#70; Doc. #25, PageID#447. Waymire testified, however, that Preble County was in charge of the search, and it was Preble County officers who asked the Chumleys to leave. Doc. #25, PageID##443, 447-48. Catherine Chumley admits that she does not know which law enforcement officer instructed her to leave. Doc. #16, PageID#70. Absent evidence that any officer under Sheriff Cox's control told the Chumleys to leave, he cannot be held liable for a failure to train.

For all of these reasons, the Court finds that Sheriff Cox is entitled to qualified immunity on Count Seven.

### C.    State Law Claims

In Counts Three through Six of the Complaint, Plaintiffs asserted state law claims of: (1) tortious interference with a business relationship; (2) intentional infliction of emotional distress; (3) defamation and false light; and (4) slander. Defendants have moved for summary judgment on these claims as well.

### 1.    Tortious Interference with a Business Relationship

Count Three of Plaintiffs' Complaint alleges that, because Defendants withheld certain files, records and contract proposals, Plaintiffs "were not able to

procure contracts, resulting in the loss of substantial profit and future business opportunities." Doc. #1, PageID#11.

Under Ohio law, to state a claim for tortious interference with business relationships, a plaintiff must show (1) the existence of a business relationship, or a prospective business relationship not yet reduced to contract; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *Kuvedina, LLC v. Cognizant Tech. Solutions*, 946 F. Supp. 2d 749, 756 (S.D. Ohio 2013).

When asked at his deposition, Edward Chumley could not identify any specific business relationships or prospective business relationships with which Defendants interfered. Doc. #17, PageID#114. Although Plaintiffs' memorandum in opposition alleges that "Defendants' conduct has induced at least one third party to discontinue a business relationship with Plaintiffs," Doc. #28, PageID#557, Plaintiffs do not identify the third party or present any evidence to support this statement. Edward Chumley's speculation that he lost business because people "were afraid to come around," Doc. #17, PageID#114, is wholly insufficient. Because Plaintiffs have failed to present any evidence on this essential element of their claim, Defendants are entitled to summary judgment.

### 2. Intentional Infliction of Emotional Distress

Count Four of Plaintiffs' Complaint alleges that Plaintiffs suffered pain, emotional distress, anxiety and depression, humiliation, mortification and embarrassment, as a result of Defendants' conduct. Doc. #1, PageID#12.

To establish a claim for intentional infliction of emotional distress, a plaintiff must show: "(1) that the defendant intended to cause the plaintiff serious emotional distress; (2) that the defendant's conduct was extreme and outrageous; and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgt., Inc.*, 71 Ohio St. 3d 408, 410, 644 N.E.2d 286, 289 (Ohio 1994). Liability will be found only where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 375, 453 N.E.2d 666, 671 (Ohio 1983).

Defendants argue that they are entitled to summary judgment on this claim because, based on the evidence presented, no reasonable jury could find that Plaintiffs suffered "serious emotional distress." Nor could a reasonable jury find that Defendants' conduct was extreme and outrageous. The Court agrees on both accounts.

Edward Chumley testified that, although he did not like having his property searched, it did not bother him. Doc. #17, PageID#115. Catherine Chumley testified that she was "shook up" and does not remember driving to her son's house, but sought no mental health treatment as a result of this incident. Doc. #16, PageID##70, 83. This is not the kind of "severe and debilitating" emotional injury needed to support a claim of intentional infliction of emotional distress. *See Paugh v. Hanks*, 6 Ohio St. 3d 72, 78, 451 N.E.2d 759, 765 (Ohio 1983).

27

Moreover, absent extenuating circumstances, execution of a search warrant supported by probable cause does not constitute "extreme and outrageous" conduct. *See, e.g., Hunt v. City of Toledo Law Dep't*, 881 F. Supp. 2d 854, 886 (N.D. Ohio 2012) (holding that officers' conduct in breaking down front door, searching plaintiffs' belongings, handcuffing plaintiffs and forcibly detaining them, was not sufficiently extreme and outrageous to support claim).

For both of these reasons, Defendants are entitled to summary judgment on Plaintiffs' claim of intentional infliction of emotional distress.

### 3. Defamation and False Light, Slander

Counts Five of Plaintiffs' Complaint alleges that the search, conducted in broad daylight, "gave their neighbors the unmistaken impression that Plaintiffs had committed a crime, when they had not," thereby defaming Plaintiffs and presenting them in a false light. Doc. #1, PageID#12. Count Six alleges that Deputy Waymire slandered Plaintiffs, falsely telling several people that Plaintiffs were guilty of theft, receiving stolen property, burglary, and breaking and entering. *Id.* at PageID#13.

Claims of defamation, including both libel and slander, and false-light invasion of privacy each require the plaintiff to prove that the defendant published or publicized a false statement. *See Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.*, 81 Ohio App. 3d 591, 601, 611 N.E.2d 955, 962 (Ohio Ct. App. 1992) (setting forth elements of defamation under Ohio law); *Welling v. Weinfeld*,

113 Ohio St. 3d 464, 866 N.E.2d 1051 (Ohio 2007) (recognizing false-light invasion of privacy claim and setting forth elements).

Here, Plaintiffs admitted at their depositions that they were not aware of any statements at all (other than those made in the search warrant affidavit) that Defendants made to the media, or anyone else, about the search, Plaintiffs or their property. Doc. #16, PageID##84-86; Doc. #17, PageID##118-19. The fact that a local television station ran a story about the search is irrelevant. Accordingly, Defendants are entitled to summary judgment on this claim also.

**III.    Defendants' Motion to Exclude Plaintiffs' Expert's Report and Opinions (Doc. #21)**

Along with their Motion for Summary Judgment, Defendants filed a Motion to Exclude Plaintiffs' Expert's Report and Opinions, Doc. #21. Plaintiffs had submitted an expert witness report from Leonard P. Keller, a law enforcement officer with 41 years of experience. That report, Doc. #21-1, PageID#356, which was less than one page in length, summarily concluded that Waymire's affidavit for the search warrant at issue was not sufficiently detailed to support a finding of probable cause, and that the MCSO policies and procedures were too vague to provide proper direction for the execution of the search warrant.

Defendants argued that Keller's conclusory report failed to comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B), and contained improper legal

conclusions.  They further argued that Keller is not qualified to issue an opinion on these topics.

Plaintiffs filed a memorandum in opposition to Defendants' motion.  Doc. #23.  Notably, however, Plaintiffs did not rely on Keller's expert witness report at all in responding to Defendants' Motion for Summary Judgment.  The Court therefore OVERRULES Defendants' Motion to Exclude Plaintiffs' Expert's Report and Opinions, Doc. #21, AS MOOT.

## IV.    Conclusion

For the reasons set forth above, the Court SUSTAINS Defendants' Motion for Summary Judgment, Doc. #20, in its entirety.  Judgment will be entered in favor of Defendants and against Plaintiffs.

Defendants' Motion to Exclude Plaintiffs' Expert's Report and Opinions, Doc. #21, is OVERRULED AS MOOT.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: February 27, 2015

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

30